IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| SKYWAY TOWERS LLC,<br>a Delaware Limited Liability Company,<br><br>v.<br><br>CITY OF POTH, TEXAS, the CITY COUNCIL OF THE CITY OF POTH, TEXAS, TAMI RAMZINSKI, ANABEL RAMON, CHUCK MORRIS, RONALD WEIMER, and STEVEN WIATREK, in their official capacities as members of the City Council of the City of Poth, Texas, and CHRYSTAL ECKEL, in her official capacity as Mayor of the City of Poth, Texas.<br><br>Defendants. | CIVIL ACTION FILE NO. 5:20-cv-226 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND EXPEDITED TREATMENT**

Plaintiff, Skyway Towers LLC ("Skyway"), by and through its undersigned attorneys, hereby files this Complaint against Defendants the City of Poth, Texas, the City Council of the City of Poth, Texas, Tami Ramzinski, Anabel Ramon, Chuck Morris, Ronald Weimer, and Steven Wiatrek, in their official capacities as members of the City Council of the City of Poth, Texas, and Chrystal Eckel, in her official capacity as Mayor of the City of Poth, Texas (collectively, the "City"), alleging as follows:

**Nature of the Action**

This action arises out of the City's unlawful denial of Skyway's application to construct a wireless telecommunications facility on a commercially-zoned tract of land that is currently occupied by a car wash. The City's denial is not supported by substantial evidence contained in

a written record and the denial effectively prohibits the provision of personal wireless service in the vicinity of the proposed facility. Accordingly, the City's denial of Skyway's application violates the federal Communications Act, as amended, 47 U.S.C. § 332(c)(7) (the "Communications Act" or "Act"), and Skyway is entitled to an order directing the City to grant Skyway's application for the proposed facility.

Plaintiff requests expedited treatment of this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

## Parties, Jurisdiction, and Venue

1. Plaintiff, Skyway Towers LLC ("Skyway"), is a Delaware Limited Liability Company authorized to transact business in Texas. Skyway constructs, owns, and manages wireless telecommunications facilities that are used by national and regional wireless carriers to provide personal wireless services to end-user consumers in Texas and throughout the country.

2. Defendant City of Poth, Texas is a political subdivision of the State of Texas and is subject to the jurisdiction of this Court.

3. Upon information and belief, Defendants Tami Ramzinski, Anabel Ramon, Chuck Morris, Ronald Weimer, and Steven Wiatrek are residents and domiciliaries of the Western District of Texas, and are members of the City Council of the City of Poth, Texas, and are subject to the jurisdiction of this Court.

4. Upon information and belief, Defendant Chrystal Eckel is a resident and domiciliary of the Western District of Texas, and the Mayor of the City of Poth, Texas, and subject to the jurisdiction of this Court.

5. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 47 U.S.C. § 332(c)(7) because of the existence of federal questions arising under the

Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "Communications Act"). The Court has authority to issue declaratory judgment relief pursuant to 28 U.S.C. § 2201(a).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 90(a)(2) in that Defendants reside in this judicial district, the proposed wireless communications facility would be located in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## Statement of Facts

### Federal Statutory Control of Wireless Siting

7. The Communications Act governs federal, state and local government regulation of the siting of personal wireless service facilities such as the one at issue in this case. 47 U.S.C. § 332(c)(7)(B).

8. The Communications Act further provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with § 332(c)(7) of the Communications Act may seek review in the federal courts, and that the courts shall hear and decide the action on an expedited basis. 47 U.S.C. § 332(c)(7)(B)(v).

### The Wireless Communications Service Industry

9. Skyway constructs, owns, and manages wireless communications facilities in Texas and elsewhere in the country. Skyway leases space on its facilities to national and regional wireless carriers who provide personal and advanced wireless services, as well as other telecommunications services, as those terms are defined under federal law, to end-user wireless consumers. In providing this valuable service to wireless carriers, Skyway is facilitating the development and deployment of advanced wireless and broadband connectivity consistent with

the goals of the Communications Act. Skyway also leases space on its facilities to federal, state, and local first responders, law enforcement, and public safety agencies.

10. AT&T provides commercial mobile radio services, personal and advanced wireless services, and other telecommunications services, as those terms are defined under federal law, in the State of Texas, including in the City of Poth.

11. AT&T is seeking to facilitate the maintenance and development of a wireless telecommunications network in keeping with the goals of the Communications Act. AT&T uses licenses issued by the FCC pursuant to 47 U.S.C. § 151 to provide wireless service in Poth, Texas.

12. Section 151 of the Communications Act establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. §151.

13. To meet these policy goals, AT&T seeks to provide myriad wireless services to local businesses, public safety entities and the general public.

14. Likewise, to advance the national policies enumerated under 47 U.S.C. § 151 and repeatedly reiterated by the FCC, Skyway constructs towers and other wireless facilities that allow wireless carriers, such as AT&T, to create and maintain a network of "cell sites," each of which consists of antennas and related electronic communications equipment designed to send and receive radio signals.

15. To provide reliable service to a user, coverage from cell sites must overlap in a grid pattern resembling a honeycomb. If Skyway is unable to construct a cell site within a specific geographic area, the wireless carriers it serves, such as AT&T, will not be able to provide service to the consumers within that area.

16. To determine where a new wireless facility is required, radio frequency ("RF") engineers use various techniques, such as sophisticated computer programs and field testing, to complete a propagation study, which shows where cell sites need to be located in order to provide service. The propagation study also takes into account the topography of the land, the coverage boundaries of neighboring cell sites, and other factors. For a wireless network to perform, cell sites must be located, constructed and operated so that reliable service can be achieved. If there is no functioning cell site within a given area, or if the cell sites around an area lack sufficient capacity to handle the amount of customer demand for limited wireless spectrum, there will be no reliable service for customers within that area, and customers who live or travel in the area will experience an unacceptable level of dropped calls and call connection failures.

### The Proposed Facility & Application Process

17. Based upon research and analysis by RF engineers, AT&T determined that it has a significant gap in its ability to provide reliable service in the City of Poth, Texas.

18. This gap has been deemed significant by AT&T based on the population served and traffic in the area, and must be remedied in order for AT&T to provide reliable service to the targeted area.

19. AT&T's RF engineers identified and provided Skyway with a search ring, and requested that Skyway develop a wireless communications facility somewhere within that area so that AT&T may remedy its significant gap in service.

20.     The majority of the search ring identified by AT&T is zoned R-1 or R-4 Residential. There is a thin strip zoned General Business ("GB") District along the east side of Highway 181 and South Sorts Street. There is also a FEMA flood plain that runs through the northwest end of the search ring.

21.     Skyway then investigated suitable properties in the vicinity of the search ring that were appropriate for a wireless communications facility. An appropriate candidate would have to (1) fill the gap in service, (2) have the potential to comply with the local zoning requirements, (3) be leasable, and (4) be buildable. A property that does not meet each of those requirements is not a viable candidate.

22.     After a thorough investigation of the surrounding area, Skyway determined that there are no existing communications towers or structures that can accommodate collocation and remedy AT&T's significant gap in service.

23.     Skyway undertook a good faith analysis of potential locations for the wireless communications tower. Skyway evaluated and considered eleven (11) potential sites.

24.     From its analysis, Skyway identified a tract of land located at 505 South Storts Street, Moczygemba Subdivision, Block 1, Lot 4 and SE half of Lot 5, Poth, Texas (the "Subject Property") and concluded that it (1) is in the search area, and thus sufficient to remedy AT&T's significant gap in service; (2) is in a zone that permits wireless communications facilities with a Specific Use Permit; (3) has a property owner willing to enter into a long-term lease for a portion of land for the construction of a wireless communications facility on commercially reasonable terms; and (4) is suitable for constructing and maintaining a wireless communications facility.

25.     Each of the other ten (10) alternative sites that Skyway evaluated and considered were ruled out for failing one of the four criteria identified in paragraph 21 above.

26. The Subject Property is zoned GB pursuant to the City's Planning and Zoning Ordinance (#121911) ("Zoning Ordinance"), and is currently occupied by a car wash.

27. Skyway's proposed wireless telecommunications facility is able to achieve adequate set backs on the Subject Property pursuant to the City's Zoning Ordinance.

28. The Subject Property provides the least intrusive means of filling a significant gap in AT&T's ability to provide service in the City, and is the only feasible plan to remedy the significant gap in service.

29. Skyway agreed to lease terms with the property owner of the Subject Property, and the City issued Skyway a Building Permit to develop a wireless communications facility on the Subject Property.

30. Article I Section 3 of the City's Zoning Ordinance states "[t]he Zoning Regulations and Districts as herein established have been made in accordance with a Comprehensive Plan for the purpose of promoting the health, safety and general welfare of the City. They have been designed to lessen the congestion in the Street; to secure safety from fire, panic and other danger; to provide adequate light and air; to prevent overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements."

31. Article IX of the City's Zoning Ordinance governs the GB Zoning District. The purpose of the GB Zoning District is to "provide for general commercial uses which serve a City-wide or regional area."

32. Article XV of the City's Zoning Ordinance governs Specific Use Permits. Section 1.1 provides that the Council "may authorize the issuance of Specific Use Permits for zoning

specific uses set forth in Appendix A, Schedule of Uses, when situated within the Zoning Districts identified within the schedule."

33. Appendix A to the City's Zoning Ordinance allows for towers like the one proposed by Skyway to be constructed in a General Business District with a Specific Use Permit.

34. On or about June 10, 2019, Skyway requested a preliminary meeting with the City Engineer, and paid the applicable $300 fee therefore, to discuss the location and construction of the proposed communications tower on the Subject Property.

35. On or about July 26, 2019, the City issued to Skyway a building permit for the construction of the proposed communications tower.

36. Pursuant to the building permit, Skyway began preparation and foundation work for the construction of the proposed communications tower.

37. On information and belief, at some point after issuance of the building permit the City determined that the building permit had been issued in error and that, pursuant to the Zoning Ordinance, a Specific Use Permit was required for the construction of the proposed communications tower.

38. On or about November 18, 2019, the City issued a Stop Work Order to Skyway, with which Skyway complied.

39. On or around that same date, the City informed Skyway that the proposed communications tower required approval of a Specific Use Permit before construction could be resumed.

40. On or about November 21, 2019, Skyway submitted an application for a Specific Use Permit for the proposed communications tower.

41. On or about December 3, 2019, Skyway representatives met with Mayor Chrystal Eckel to discuss the proposed communications tower.

42. Subsequent to that meeting, Skyway submitted to the City an information package about the proposed communications tower. That package included: the Specific Use Permit application and cover letter submitted therewith; the site plan map included with the Specific Use Permit application; an engineering letter from the tower manufacturer; a map of the search ring provided by AT&T; an FCC Consumer Guide regarding Human Exposure to Radio Frequency Fields; and informational literature from the Wireless Infrastructure Association entitled "Wireless Networks and Your Health: THE FACTS."

43.

**Skyway's Specific Use Permit Application is Denied Despite Receiving Recommendation for Approval by the Planning and Zoning Commission**

44. On January 15, 2020, a public hearing was held before the City's Planning and Zoning Commission (the "Commission") to consider Skyway's Specific Use Permit application. The Commission recommended that Skyway's application be approved by the City Council.

45. On January 27, 2020, a public hearing before the City Council was held, during which Skyway's Specific Use Permit application was considered.

46. At both public hearings Skyway presented evidence and testimony supporting the application and explaining that the proposed communications tower complies with each of the relevant requirements of the City's Zoning Ordinance.

47. Skyway presented proof, including propagation maps, of a significant gap in AT&T's service in the City.

48. Skyway presented testimony from AT&T's RF engineer, explaining the propagation maps and the need for both coverage and capacity in a wireless network.

49. Skyway explained that it evaluated a number of alternative locations and that AT&T was unable to collocate on any other properties.

50. Skyway presented the City with an alternative site analysis of other properties that it had considered, along with the reasons that those properties were not suitable for the proposed communications tower.

51. Skyway presented the City with a letter from a professional engineer demonstrating that the proposed communications tower was designed to result in a "zero radius fall zone" in the event of an extreme wind event.

52. Skyway explained that the proposed communications tower will be part of the FirstNet system for public safety, a nationwide program that specifically dedicates space for public safety, which is critical in an open area such as the City.

53. Because the proposed communications tower is a FirstNet site, it cannot be located within the floodplain, since it must be on air even during times of crises.

54. Skyway also explained that the proposed communications tower would support wireless connectivity for E911 systems, the City's schools, and social media applications, which cities have found to be critical tools in the event of an emergency.

55. Four people spoke in opposition to the application at the City Council meeting. Some of the opposition was generalized "not in my backyard" objections to the tower. Other opposition was based on concerns for children's health; safety concerns related to tower failure, falling debris, and buzzards; and generalized concerns related to the height of the tower.

56. At the City Council hearing, the City's attorney advised the City that its responsibility was to determine whether the application for the Specific Use Permit should issue because the proposed communications tower is compatible within the General Business district,

whether the proposed communications tower could be made compatible with specific conditions, or whether "there are no conditions that can be placed [on the proposed communications tower] that can make this compatible."

57. Despite the generalized and speculative complaints raised by the citizens who spoke in opposition, the City did not consider or evaluate any conditions or mitigation factors that could apply to the proposed communications tower.

58. Council Member Tami Ramzinski made a motion to deny Skyway's application for a Specific Use Permit "due to undesirable hazardous conditions, the odors, debris, feces of the buzzards, and offensive view that could happen." The motion was seconded by Council Member Chuck Morris, who added that the application should be denied based on Article IX, Section 2.2 of the City's Zoning Ordinance.

59. The motion to deny passed unanimously.

60. On January 29, 2020, the City provided Skyway with written notice that its Specific Use Permit application had been denied (the "Denial").

61. The Denial stated that:

    a. "[t]he City Council, being unable to determine a manner by which the proposed use can be compatible or made compatible with the surrounding, existing land uses, does hereby DENY the application for Special [sic] Use Permit based on all of the evidence considered before the City Council and for the following reasons: After hearing citizens express concerns related to the safety from tower failure, falling debris, generator fumes, height of the tower, distance of the tower to adjacent residential property, tower height in comparison to other city structures,

nesting buzzards and their disease, toxic vomit and smell, and the defined General Business purpose and general compatibility provision in the zoning ordinance."

62. The Denial also referenced Councilmember Ramzinski's "motion to deny the Specific Use Permit due to undesirable hazardous conditions, odor, debris, feces, buzzards and offensive view," as well as Councilmember Morris's request to base the denial on Article IX, Section 2.2 of the City's Zoning Ordinance.

63. The Denial also stated that the Mayor, who did not vote on the Application, added that "[t]he leg of the tower though technically had adequate set back, would only be 32 feet from the nearest home's backdoor. The reasonable enjoyment of the neighbor's property would be significantly jeopardized." However, that statement was not made at the hearing or prior to the vote to deny Skyway's Specific Use Permit application.

**Recent Federal Mandate Limits and Restricts the Factors and Issues That May Be Considered When Evaluating the Placement of New Wireless Communication Facilities**

64. The FCC has recently limited the factors and issues that may be considered by the City in evaluating the placement of the proposed wireless communication facility.

65. In *In the Matter of Acceleration of Broadband Deployment by Removing Barrier to Infrastructure Investment,* Declaratory Ruling and Third Report and Order, 33 FCC Rcd. 9088, 2018 WL 4678555 (2018) (Sept. 27, 2018) (the "*FCC 2018 Order*"), the FCC issued a declaratory ruling that definitively interpreted the "effective prohibition" language of Section 332(c)(7)(B)(i)(II). The FCC declared that the standards adopted by the Fifth Circuit and other courts applying Section 332(c)(7)(B)(i)(II) were incorrect. *Id.* n.94. Instead, the FCC declared that "an effective prohibition [of service] occurs where a state or local legal requirement ***materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service.***" *Id.* ¶ 37 (emphasis added). The FCC made clear that the City

effectively prohibits the provision of wireless services if it inhibits or limits the provider "not only when filling a coverage gap *but also when densifying a wireless network, introducing new services or otherwise improving service capabilities*." *Id.* ¶ 37 (emphasis added). The FCC also made clear that an effective prohibition includes inhibiting a provider from deploying the "performance characteristics" of its choosing. *Id.* n.86. The *FCC 2018 Order* also declares that local governments cannot deny an application for a wireless site based on the alleged existence of alternative locations.

### The City's Denial Violates the Communications Act

66. The City's denial of the Specific Use Permit application violates the Communications Act.

67. There is no evidence disputing the existence of a significant gap in AT&T's service in the vicinity of the Subject Property.

68. Skyway has presented testimony and evidence to the Commission and City Council concerning AT&T's significant gap in service.

69. Skyway provided testimony and evidence that the proposed communications tower meets the requirements for approval under the Zoning Ordinance.

70. There is no record evidence that approval of the Specific Use Permit application would be inconsistent with or violate the City's Zoning Ordinance or any other applicable law.

71. Skyway presented testimony and evidence to the Commission and City Council that they thoroughly investigated the possibility of other viable alternatives, but that no other alternative was feasible or available.

72. There is no record evidence refuting Skyway's demonstration that they investigated thoroughly the possibility of other viable alternatives before concluding that no other alternative was feasible or available.

73. There is no evidence demonstrating the existence of viable alternatives that would remedy the significant gap in AT&T's services and no viable alternative exists, or if one does exist it would not be less intrusive than the proposed communications tower.

74. There is no evidence in the written record suggesting that there are existing towers or alternative tower structures that are technically and commercially reasonably available for shared use or collocation.

75. To the contrary, the record evidence establishes that there were no viable collocation sites.

76. There is no substantial evidence to dispute any of the evidence submitted by Skyway.

77. Skyway has complied with all applicable procedural and substantive requirements of the City's Zoning Ordinance and satisfied all applicable requirements and conditions precedent to obtain the requested relief from the City which would allow it to build and operate the proposed communications tower at the Subject Property.

78. Skyway has exhausted all administrative remedies for addressing the City's actions.

79. This Complaint is timely filed within thirty days of the City Council's final Denial pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

## COUNT I
### (Violation of 47 U.S.C. § 332(c)(7)(B)(iii) – Substantial Evidence)

80. Skyway incorporates by reference and realleges the foregoing factual allegations in paragraphs 1 through 78 as if fully set forth herein.

81. Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

82. Skyway satisfied all of the criteria set forth in the City's Zoning Ordinance for approval of a Specific Use Permit to install a wireless communications facility on the Subject Property.

83. At the January 15, 2020 public hearing before the Commission, and January 27, 2020 public hearing before the City Council, Skyway presented substantial and uncontroverted evidence regarding the need for the proposed communications tower and that the proposed communications tower was consistent with Article IX of the City's Zoning Ordinance, including the City's need for seamless wireless connectivity to support emergency, medical, public safety, and educational requirements; and an engineering letter attesting to the proposed facility's structural integrity in the face of a severe wind event. There is no record evidence refuting Skyway's substantial evidence that it met the City's zoning criteria.

84. Skyway provided substantial and uncontroverted evidence sufficient to determine that operation of the proposed communications tower is a use in harmony with the general purpose and intent of the City's Zoning Ordinance. There is no record evidence refuting Skyway's substantial evidence that it met these criteria.

85. Skyway presented substantial and uncontroverted evidence, including RF propagation maps, regarding AT&T's significant gap in service.

86. At the January 27, 2020 City Council hearing, four people spoke in opposition to the Application based on generalized "not in my backyard" concerns, health and safety concerns, and speculation that the proposed communications tower would attract buzzards.

87. At the January 27, 2020 City Council hearing, the City Council voted unanimously to deny Skyway's Specific Use Permit application.

88. There is no substantial record evidence that the approval of the Specific Use Permit application would be inconsistent with or would violate the City's Zoning Ordinance or other applicable law.

89. There is no substantial evidence to dispute any of the evidence submitted by Skyway, or to dispute the existence of a significant gap in AT&T's service in the vicinity of the Subject Property.

90. There is no evidence in the written record suggesting that there are existing towers or alternative tower structures that are technically and commercially reasonably available for shared use or collocation. Nor is there any evidence demonstrating the existence of viable alternatives that would remedy the significant gap in AT&T's service.

91. Skyway complied with all applicable procedural and substantive requirements of the City's Zoning Ordinance and satisfied all applicable requirements and conditions precedent to obtain the requested relief from the City to build and operate the proposed facility at the Subject Property.

92. The City's denial of the application for the proposed facility is not supported by substantial evidence contained in the written record.

93. Consequently, the City's action is in violation of, and preempted by, Section 332(c)(7)(B)(iii) of the Communications Act, and should be set aside and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order directing the City to approve the application for the proposed facility.

## COUNT II
### (Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) – Effective Prohibition)

94. Skyway incorporates by reference and realleges the foregoing factual allegations in paragraphs 1 through 92 as if fully set forth herein.

95. Pursuant to 47 U.S.C. § 332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

96. In the *FCC 2018 Order*, the FCC issued a declaratory ruling that definitively interpreted the "effective prohibition" language of Section 332(c)(7)(B)(i)(II). The FCC declared that the standards adopted by the courts applying Section 332(c)(7)(B)(i)(II) were incorrect. *Id.* n.94. Instead, the FCC declared that "an effective prohibition [of service] occurs where a state or local legal requirement *materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service.*" *Id.* ¶ 37 (emphasis added). The FCC made clear that the City effectively prohibits the provision of wireless services if it inhibits or limits a provider "not only when filling a coverage gap *but also when densifying a wireless network, introducing new services or otherwise improving service capabilities*." *Id.* ¶ 37 (emphasis added). The FCC also made clear that an effective prohibition includes inhibiting a provider from deploying the "performance characteristics" of its choosing. *Id.* n.86. The *FCC*

17

*2018 Order* also declares that local governments cannot deny an application for a wireless site based on the alleged existence of alternative locations.

97. The *FCC 2018 Order* is currently in effect, and it governs Skyway's claim under 47 U.S.C. § 332(c)(7)(B)(i)(II).

98. Under the *FCC 2018 Order*, AT&T has identified an area in which needs to install a wireless facility to provide coverage, network capacity, and ultimately provide service. AT&T has requested that Skyway find a property in that area and construct a communications tower that will meet AT&T's needs. The City's Denial of Skyway's Specific Use Permit application materially inhibits or limits Skyway's ability to install the proposed communications tower and thus materially inhibits or limits AT&T's ability to provide its service at levels it deems appropriate. Accordingly, the City's Denial amounts to an effective prohibition of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

99. In addition, or in the alternative, even following the standard for claims under Section 332(c)(7)(B)(i)(II) previously adopted by the Fifth Circuit, the City's Denial of Skyway's Application effectively prohibits AT&T from providing personal wireless service in violation of Section 332(c)(7)(B)(i)(II).

100. Skyway investigated alternative sites in and around the area of the site for the proposed communications tower within which the wireless carrier determined that a significant gap exists and that a wireless communications facility must be located to remedy the significant gaps in reliable service for the wireless carrier.

101. No site other than the Proposed Site is technically feasible, practically available, consistent with the City's zoning requirements, and suitable for construction.

102. No potential alternative site is less intrusive than the proposed communications tower on the Subject Property.

103. There is no existing structure in or near the vicinity of the Subject Property that is both reasonably available and technologically feasible to remedy the significant gaps in personal wireless service in the area.

104. The proposed communications tower on the Subject Property is the least intrusive means to close the significant gap in personal wireless service in light of the values sought to be served by the Denial.

105. The City's Denial of the Specific Use Permit application causes an effective prohibition of personal wireless service in the area surrounding the proposed communications tower on the Subject Property.

106. Consequently, the City's denial of the Specific Use Permit application is in violation of, and preempted by, Section 332(c)(7)(b)(i)(II) of the Communications Act, and should be set aside and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order directing the City to approve the Specific Use Permit application for the proposed communications tower.

**WHEREFORE**, Skyway respectfully requests that the Court:

(a) Conduct an expedited review of the matters set forth in this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

(b) Adjudge that Defendants' actions and decisions violated federal law and are therefore void and invalid;

(c) Overturn Defendants' decision denying the requested Specific Use Permit;

(d) Issue an order requiring Defendants to grant the Specific Use Permit application and all ancillary approvals and permits necessary for the construction of the proposed communications tower at the Subject Property; and

(e) Grant such other and further relief in favor of Skyway as may be just and proper.

Respectfully Submitted,

SKYWAY TOWERS, LLC

By their attorneys,

_/s/ Daniel P. Reing_____
Daniel P. Reing, Esq.
Bar Number: 73348
Courtney T. DeThomas, Esq. (application for admission forthcoming)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave. NW, Suite 800
Washington D.C. 20006
202-973-4200
danielreing@dwt.com
courtneydethomas@dwt.com

Bebb Francis, Esq.
Bar Number: 07360500
The Francis Law Firm, P.C.
112 E. Pecan Street, Suite 550
San Antonio, TX 78205
Tel. 210-222-1100
Fax 210-222-2468
wbfrancis@francislawfirm.com

*Counsel for Plaintiff*

Dated: February 25, 2020